<u>**ORAL ARGUMENT SCHEDULED FOR JANUARY 9, 2015**</u>

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

Case No. 11-1428 (Consolidated with Nos. 11-1441 & 12-1427)
_____

DELTA CONSTRUCTION COMPANY, INC., *et al.*,
*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,
*Respondents.*
_____

ON PETITIONS FOR REVIEW OF FINAL ACTIONS BY THE
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY AND THE
UNITED STATES DEPARTMENT OF TRANSPORTATION
_____

FINAL BRIEF OF MOVANT RESPONDENT-INTERVENORS
ENVIRONMENTAL DEFENSE FUND, NATURAL RESOURCES DEFENSE
COUNCIL, AND SIERRA CLUB
_____

VICKIE PATTON
GRAHAM MCCAHAN
PETER ZALZAL
Environmental Defense Fund
2060 Broadway St., Ste. 300
Boulder, CO 80302
(303) 447-7214
pzalzal@edf.org

*Counsel for Environmental Defense
Fund*

SEAN H. DONAHUE
Donahue & Goldberg, LLP
1130 Connecticut Avenue, N.W.
Suite 950
Washington, D.C. 20036
(202) 277-7085
sean@donahuegoldberg.com

*Counsel for Environmental Defense
Fund*

BENJAMIN LONGSTRETH
Natural Resources Defense Council
1152 15th Street NW
Washington, DC 20005
(202) 513-6256
blongstreth@nrdc.org

DAVID PETTIT
Natural Resources Defense Council
1314 Second Street
Santa Monica, CA 90401
(310) 434-2300
dpettit@nrdc.org

*Counsel for Natural Resources
Defense Council*

ZACHARY M. FABISH
Sierra Club
50 F Street NW, 8th Floor
Washington, DC 20001
(202) 675-7917
zachary.fabish@sierraclub.org

*Counsel for the Sierra Club*

Dated: November 24, 2014

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Movant Respondent-Intervenors state as follows:

### A. Parties and Amici

All parties, intervenors, and amici appearing in this Court are listed in the Petitioners' Joint Opening Brief.

### B. Rulings Under Review

References to the rulings at issue appear in the Opening Brief of Respondents.

### C. Related Cases

We are unaware of any related cases.

Respectfully submitted,

/s/ Peter Zalzal
PETER ZALZAL
Environmental Defense Fund
2060 Broadway St., Ste. 300
Boulder, CO 80302
(303) 447-7214
pzalzal@edf.org

*Counsel for Environmental Defense Fund*

i

# RULE 26.1 DISCLOSURE STATEMENT OF ENVIRONMENTAL DEFENSE FUND, NATURAL RESOURCES DEFENSE COUNCIL, AND SIERRA CLUB

Pursuant to Fed. R. App. P. 26.1 and Circuit Rule 26.1, Movant Respondent-Intervenors Environmental Defense Fund, Natural Resources Defense Council, and Sierra Club provide the following corporate disclosure statement:

The above-named Movant Respondent-Intervenors are not-for-profit organizations focused on protection of the environment and conservation of natural resources. Movant Respondent-Intervenors do not have any outstanding shares or debt securities in the hands of the public nor any parent, subsidiary, or affiliates that have issued shares or debt securities to the public.

<div style="margin-left:auto;">

/s/ Peter Zalzal
PETER ZALZAL
Environmental Defense Fund
2060 Broadway St., Ste. 300
Boulder, CO 80302
(303) 447-7214
pzalzal@edf.org

</div>

Dated: November 24, 2014

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

RULE 26.1 DISCLOSURE STATEMENT............................................................. ii

TABLE OF AUTHORITIES ........................................................................ iv

GLOSSARY.................................................................................................... vii

STATUTES AND REGULATIONS ........................................................................1

INTRODUCTION ...................................................................................................1

GROUNDS FOR INTERVENTION UNDER FED. R. APP. 15(d)........................2

SUMMARY OF ARGUMENT ...............................................................................4

ARGUMENT ..........................................................................................................6

   I.   DELTA'S ARGUMENTS AGAINST INTERVENTION ARE
   BASELESS. ................................................................................................6

   II.  EPA REASONABLY FOCUSED ON VEHICLE EMISSIONS FOR ITS
   FIRST-GENERATION GREENHOUSE GAS TRUCK STANDARDS.............9

   III.   THE COURT SHOULD DENY DELTA'S PROCEDURAL
   CHALLENGE TO EPA'S TRUCK RULE. .......................................................12

     A.  The Advisory Board Statute Does Not Apply And, If It Did, EPA
     "Made Available" The Proposed Rule To The Advisory Board. ...............13

     B.  The Clean Air Act's Provisions on Procedural Errors, 42 U.S.C.
     § 7607(d)(8), (9), Apply To Reviewing The Alleged Advisory Board
     Error. ...........................................................................................................15

     C.  Even If EPA Violated The Advisory Board Statute, Any Error Is Not
     So Serious, As Required By 42 U.S.C. § 7607(d)(8), (9), As To Warrant
     Invalidating The Rule. ................................................................................16

CONCLUSION .....................................................................................................18

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ....................................21

CERTIFICATE OF SERVICE ..............................................................................22

# TABLE OF AUTHORITIES

## Cases

*Am. Farm Bureau Fed'n v. EPA*,
  559 F.3d 512 (D.C. Cir. 2009)...............................................................9

*Am. Petroleum Inst. v. Costle*,
  665 F.2d 1176 (D.C. Cir 1981)..........................................................16

*Appalachian Power Co. v. EPA*,
  135 F.3d 791 (D.C. Cir. 1998)...........................................................17

*Bond v. United States*,
  131 S. Ct. 2355 (2011).......................................................................3

*Chevron, U.S.A., Inc. v. NRDC*,
  467 U.S. 837 (1984)...........................................................................15

*City of Arlington v. FCC*,
  133 S. Ct. 1863 (2013).......................................................................15

*Coal. for Responsible Regulation v. EPA*,
  684 F.3d 102 (D.C. Cir. 2012)...................................................... 16, 17

*Comcast Corp. v. FCC*,
  579 F.3d 1 (D.C. Cir. 2009)................................................................3

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...........................................................................3

*McConnell v. FEC*,
  540 U.S. 93 (2003).............................................................................3

*Parsons Steel, Inc. v. First Alabama Bank*,
  474 U.S. 518 (1986)...........................................................................16

iv

**Statutes**

42 U.S.C. § 4365(a) ...................................................................................15

*42 U.S.C. § 4365(c)(1) ..............................................................................12

42 U.S.C. § 4365(c)(2) ...............................................................................17

42 U.S.C. § 7408 ........................................................................................14

42 U.S.C. § 7408(b)(2) ...............................................................................14

42 U.S.C. § 7408(f)(1) ................................................................................14

42 U.S.C. § 7521(a)(1) .............................................................................9, 13

42 U.S.C. § 7525(a)(2) ...............................................................................14

42 U.S.C. § 7607(d) .................................................................................5, 16

42 U.S.C. § 7607(d)(7)(A) ..........................................................................17

*42 U.S.C. § 7607(d)(8) ................................................................... 12, 13, 15

42 U.S.C. § 7607(d)(9) ......................................................................... 12, 15

5 U.S.C. § 706 ..............................................................................................6

**Court Rules**

*D.C. Cir. Rule 15(b) ...............................................................................4, 7

Fed. R. App. P. 15(d) ...................................................................................6

Fed. R. App. P. 26(b) ...................................................................................8

**Regulations**

74 Fed. Reg. 66,496 (Dec. 15, 2009) ...........................................................2

75 Fed. Reg. 25,324 (May 7, 2010) ..........................................................................2

75 Fed. Reg. 74,152 (Nov. 30, 2010)........................................................................18

*76 Fed. Reg. 57,106 (Sept. 15, 2011) ....................................................... 1, 2, 9, 10

77 Fed. Reg. 51,701 (Aug. 27, 2012)........................................................................10

\* Authorities upon which we chiefly rely are marked with asterisks.

# GLOSSARY

| | |
|---|---|
| EPA | Environmental Protection Agency |
| NHTSA | National Highway Traffic Safety Administration |
| POP Diesel | Plant Oil Powered Diesel Systems |
| RFS | Renewable Fuel Standard |
| Truck Rule | Greenhouse Gas Emissions Standards and Fuel Efficiency Standards for Medium- and Heavy-Duty Engines and Vehicles,76 Fed. Reg. 57,106 (Sept. 15, 2011) |
| UARG | Utility Air Regulatory Group |

## STATUTES AND REGULATIONS

All applicable statutes and regulations are contained in Respondents' Addendum to Opening Brief.

## INTRODUCTION

Movant Respondent-Intervenors Environmental Defense Fund, Natural Resources Defense Council, and Sierra Club (collectively, "Movants") respectfully submit this brief in support of Respondents.

On September 15, 2011, the Environmental Protection Agency ("EPA") and the National Highway Traffic Safety Administration ("NHTSA") published a final rule establishing, for the first time, a national program to control greenhouse gas emissions and establish fuel efficiency standards for medium- and heavy-duty highway vehicles.  76 Fed. Reg. 57,106 (Sept. 15, 2011) ("Truck Rule").  EPA and NHTSA designed the Truck Rule "to address the urgent and closely intertwined challenges of reduction of dependence on oil, achievement of energy security, and amelioration of global climate change."  *Id.* at 57,108.

The Truck Rule offers great benefits to the public.   Medium- and heavy-duty vehicles emit nearly nineteen percent of all mobile source greenhouse gas pollution in the U.S., and nearly six percent of total U.S. greenhouse gas pollution.  *Id.* at 57,109.  EPA and NHTSA estimate that the Truck Rule will reduce greenhouse gas emissions from medium- and heavy-duty trucks by approximately

1

270 million metric tons and save 530 million barrels of oil over the life of the

vehicles covered by the rule, which will also save truckers money in avoided fuel

costs. *Id*. at 57,106, 57,315. At the same time that the Truck Rule will ameliorate

climate change by reducing greenhouse gas emissions, *id*. at 57,298–300, it will

also decrease ground-level ozone and fine particulate pollution, and reduce the

adverse health impacts—including premature death—associated with such

pollution, *id*. at 57,333–36. The agencies projected the Rule's monetized benefits,

such as fuel savings and avoided harms from pollution, would exceed its costs by a

factor of between four and six, *id*. at 57,111 (Table I-1).

## GROUNDS FOR INTERVENTION UNDER FED. R. APP. 15(d)

As set forth more fully in their Motion for Leave to Intervene in Support of

Respondents filed on December 14, 2011 (Doc. 1347694) ("Intervention Motion"),

Movants are national nonprofit membership organizations dedicated to protecting

public health and the environment. Movants participated extensively in the

administrative proceedings concerning the challenged Rule, and were granted

leave to intervene in support of EPA in multiple related proceedings in this Court.[1]

---

[1] For example, Movants participated extensively before EPA and as intervenors in this Court in the proceedings relating to EPA's Endangerment Finding under Section 202(a), 74 Fed. Reg. 66,496 (Dec. 15, 2009) (JA 0001), and its 2010 emissions standards for light-duty vehicles, 75 Fed. Reg. 25,324 (May 7, 2010). *See* Nos. 09-1322 and 10-1092, *decided in Coal. for Responsible Regulation v. EPA*, 684 F.3d 102 (D.C. Cir. 2012), *cert. denied in relevant part*, 134 U.S. 418, 134 S. Ct. 468 (2013).

Movants have filed comments, presented testimony, and advocated in favor of regulation of greenhouse gas emissions from medium- and heavy-duty vehicles. *See* Intervention Mot. 6–7. Movants' significant participation in the Truck Rule proceedings and related agency actions strongly favors granting their motion for leave to intervene. This Court has regularly allowed intervention by environmental organizations seeking to support nationwide rulemakings like this one. *See id.* 7–8, nn.5, 6.

Movants' members will benefit directly from the substantial reductions in climate-disrupting air pollution that the Rule will bring about. These health and environmental benefits establish Movants' "interest" both for Circuit Rule 15(d) and their standing to sue under Article III of the Constitution, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), assuming such standing were required of parties who, as here, seek to intervene in support of respondents.[2]

---

[2] Article III standing requirements apply to those "who seek[] to initiate or continue proceedings in federal court," not to parties that *defend* in such proceedings. *See Bond v. United States*, 131 S. Ct. 2355, 2361–62 (2011). Even if defendant-side standing were required here, Respondent agencies have such standing, and the Court need not address Movants' standing. *See McConnell v. FEC*, 540 U.S. 93, 233 (2003); *Comcast Corp. v. FCC*, 579 F.3d 1, 5–6 (D.C. Cir. 2009).

Movants' members use, own, and enjoy property and natural resources which are harmed or at risk of harm from global warming,[3] and are injured by other forms of air pollution, including smog and hazardous pollutants, which will be mitigated by the Truck Rule.[4]  A decision overturning the Rule would result in greater harmful emissions from medium- and heavy-duty vehicles and deprive members of the benefit of substantial fuel savings.[5]

## SUMMARY OF ARGUMENT

Movants have satisfied all elements of the standard for intervention, including timeliness.  Delta Construction and the other California Petitioners (collectively, "Delta") argue that Movants' motion to intervene was untimely as to Delta's petition for review.  But Delta ignores Circuit Rule 15(b), which provides that a motion to intervene is "deemed a motion to intervene in *all cases* before this court involving the same agency action or order," and a court order granting the motion has "the effect of granting intervention in *all such cases*."  D.C. Cir. Rule 15(b) (emphases added).  Movants filed their motion to intervene within 30 days of the filing of the other timely petitions for review of the Truck Rule.  This Court routinely grants intervention as to all consolidated petitions as long as the motion

---

[3] *See, e.g.*, Coplon Decl. ¶ 4 ; Fine Decl. ¶ 7; Fort Decl. ¶ 6; Gordon Decl. ¶ 4; Keim Decl. ¶ 10; Sheehan Decl. ¶¶ 22–23; Butler Decl. ¶¶ 13–14.  All the cited declarations are found in Exhibit A to Movants' Intervention Motion.

[4] *See* Coplon Decl. ¶ 5; Fine Decl. ¶ 7.

[5] *See, e.g.*, Sheehan Decl. ¶¶ 7–9, 15; Butler Decl. ¶ 11.

to intervene was filed within 30 days of the filing of a timely petition for review challenging the agency action.  Delta offers no reason to depart from the plain terms of Circuit Rule 15(b) and this Court's established practice, which serves judicial economy and has formed the basis for parties' reasonable expectations. Nor does Delta demonstrate how it suffered any prejudice from motions to intervene that it argues were filed nine days late in 2011.

On the merits, Petitioner Plant Oil Powered Diesel Systems ("POP Diesel") challenges the Truck Rule on the grounds that the Rule is arbitrary because it is based on vehicle greenhouse gas emissions.  While the Act affords EPA authority to include upstream emissions in standards under Section 202, EPA reasonably explained its decision to base its first-ever greenhouse gas standards for trucks on the agency's longstanding, vehicle emissions framework.

Delta's Science Advisory Board ("Advisory Board") claim is likewise groundless.  Without pointing to any underlying technical flaw or scientific error in the Truck Rule, Delta claims that EPA failed to fulfill its duty to "make available" the proposed Truck Rule to the Advisory Board.  However, the relevant statutory provision, by its terms, does not apply to the Truck Rule, and, if it did, the agency satisfied its obligations under that statute.  Even if there were some procedural misstep, that error was harmless, whether considered under the proper "substantial likelihood" standard for review, set out in the Clean Air Act, 42 U.S.C. § 7607(d),

or a "prejudicial error" standard, such as the Administrative Procedure Act's, 5

U.S.C. § 706.

## ARGUMENT

### I.    DELTA'S ARGUMENTS AGAINST INTERVENTION ARE BASELESS.

Delta argues, Pet. Br. 50–52, that this Court should deny Movants' motion to

intervene in No. 11-1428 as untimely.  Its argument is based on a misreading of

Federal Rule of Appellate Procedure 15(d) and D.C. Circuit Rule 15(b) and is

contrary to this Court's regular practice in cases involving multiple petitions for

review of the same agency action.

On November 14, 2011, the Utility Air Regulatory Group ("UARG") filed a

challenge to the Rule (No. 11-1438), and Movants timely filed their motion to

intervene in that petition on December 14, 2011, "within 30 days after the petition

for review."  Fed. R. App. P. 15(d).  That petition was one of several challenging

the Truck Rule, including a petition filed by Delta (No. 11-1428) on Nov. 4, 2011,

and three other petitions (Nos. 11-1439, -1440, and -1441), which, like UARG's

petition, were filed on November 14, 2011.  All the petitions were consolidated

pursuant to this Court's order of November 17, 2011.  (Doc. 1342554).  Delta

6

challenges Movants' intervention only as to one of the five consolidated petitions

(No. 11-1428); Petitioners in the other four did not oppose intervention.[6]

Movants' intervention is proper as to all of the consolidated petitions for

review that remain pending.[7]  By operation of Circuit Rule 15(b), Movants' motion

to intervene is "deemed a motion to intervene in *all cases* before this court

involving the same agency action or order," and a court order granting the motion

would have "the effect of granting intervention in *all such cases*."  D.C. Cir. Rule

15(b) (emphases added).  That rule serves judicial economy by avoiding the need

for parties to file (and the Court to review and rule upon) separate motions to

intervene in each of what are often numerous petitions challenging the same

agency action.

Granting Movants leave to intervene as to all of the consolidated petitions

here comports with this Court's regular (and, as far as we can tell, unbroken)

practice of allowing intervention in all consolidated challenges, so long as the

motion to intervene was filed within 30 days of the filing of the last-filed, timely

---

[6] In its opposition to Movants' motion, Delta claimed that the allegedly belated intervention as to the petition in No. 11-1428 warranted denial of intervention even as to the petitions for which the intervention motion was undisputedly timely and unopposed.  Pet. Mot. in Opp'n 8, 14.  In its merits brief, however, Delta limits its argument to No. 11-1428.

[7] No. 11-1439 was dismissed on December 12, 2013, and Nos. 11-1438 and 11-1440 were dismissed pursuant to joint stipulations on July 24, 2014.  No. 12-1427 was consolidated with the earlier petitions by order entered May 1, 2013.

petition for review.[8]  That practice is consistent with Circuit Rule 15(b)'s plain

terms.  If Delta believes that Circuit Rule 15(b) should be modified so as to

provide that any intervention in consolidated challenges to an agency action must

be filed within 30 days of the first-filed petition, it should submit a proposal for a

rule change pursuant to Circuit Rule 47(b).  Here, Delta cites no practical

considerations supporting its preferred approach.  And the Circuit Rule 15(b)

approach does not, in practice, appear to delay adjudication of petition for review

proceedings at all; indeed, Delta's approach would needlessly complicate these

proceedings.

Finally, even if Delta's arguments had any merit, Movants' good faith

reliance on the plain language of Circuit Rule 15(b) and this Court's regular

practice in identical circumstances would constitute "good cause," Fed. R. App. P.

26(b), for this Court to forgive the claimed belatedness in this case.  Delta has

---

[8] *See, e.g.*, Order, *Global Tel Link v. FCC*, No. 13-1281, Doc. 1483049 (Mar. 10, 2014) (granting three motions for leave to intervene filed Jan. 28, 2014 and Feb. 11, 2014, in all consolidated challenges to FCC order, including the lead challenge filed Nov. 14, 2013).  Similar examples abound: *e.g.*, Order, *South Carolina Public Service Authority v. FERC*, No. 12-1232, Doc. 1393137 (D.C. Cir. Sept. 6, 2012); Order, *American Trucking Ass'ns v. FMCSA,* No. 12-1092, Doc. 1367376 (D.C. Cir. Apr. 5, 2012); Order, *EME Homer City Generation, L.P. v. EPA*, No. 11-1302, Doc. 1351287 (D.C. Cir. Jan. 5, 2012); Order, *Cablevision Systems Corp. v. FCC,* No. 10-01062, Doc. 245955 (D.C. Cir. May 21, 2010); Order, *Coalition for Responsible Regulation v. EPA*, No. 09-1322, Doc. 1243328 (D.C. Cir. May 5, 2010); Order, *Southeastern Legal Foundation v. EPA*, No. 10-1131, Doc. 1265460 (D.C. Cir. Sept. 13, 2010).

suffered no prejudice whatsoever from the fact that the motions to intervene were filed nine days after Delta claims they should have been filed in 2011.

## II.    EPA REASONABLY FOCUSED ON VEHICLE EMISSIONS FOR ITS FIRST-GENERATION GREENHOUSE GAS TRUCK STANDARDS.

If the Court concludes that POP Diesel's claims are properly before it, *see* EPA Br. 46–59, the Court should nonetheless reject them on the merits because EPA reasonably focused on reducing greenhouse gas emissions from the vehicle in these first generation standards.[9]

Section 202(a)(1) of the Clean Air Act requires EPA to establish "standards applicable to the emission of any air pollutant from any class or classes of new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7521(a)(1). This statutory structure permits EPA to develop standards that account for the important practical factors influencing motor vehicle pollution. *See* EPA Br. 40; EPA Resp. to Comments 16-157 (JA 1509). Accordingly, in the Truck Rule, EPA addressed greenhouse gas emissions sources that are located on the vehicle but do not come from the tailpipe, 76 Fed. Reg. at 57,117–118 (JA 0370-71) (establishing standards

---

[9] POP Diesel also disputes the agencies' calculation of the "rebound effect"—the additional vehicle miles traveled on account of increased truck fuel efficiency. Pet. Br. 48. Even if procedurally proper, POP Diesel provides no reasons to reject EPA's analysis on matters within its core technical expertise. *See Am. Farm Bureau Fed'n v. EPA*, 559 F.3d 512, 519 (D.C. Cir. 2009); *see also* EPA Br. 47.

9

for hydro-fluorocarbons—highly-potent greenhouse gases—leaked from truck air conditioning systems).[10]

EPA likewise considered incorporating "upstream" emissions into the Truck Rule, but explained that it was declining to do so based on EPA's longstanding practice of focusing on vehicle emissions and the appropriateness of continuing that practice in the initial phase of a new program to reduce greenhouse gas emission from trucks. 76 Fed. Reg. at 57,246–47 (JA 0499-0500); *see* EPA Resp. to Comments 16-157 (JA 1509) (indicating an intention to reexamine inclusion of upstream emissions in future truck rulemakings). EPA also cited certain considerations specific to the classes of vehicles at issue in the Truck Rule, 76 Fed. Reg. at 57,247 (JA 0500) (declining to incorporate upstream electric vehicle emissions due to, among other factors, "infrequent" use of electric vehicle technology in large trucks), and pointed to the availability of a separate Clean Air Act program, the Renewable Fuel Standard ("RFS"), that provides incentives for lower-carbon biogenic diesel fuels with comparatively low lifecycle carbon emissions. *See* Recon. Den., 77 Fed. Reg. 51,701, 51,704 (Aug. 27, 2012) (JA 1845).

---

[10] Separate from its standard-setting authority under Section 202, the agency also accounted for upstream emissions in its regulatory impacts analysis and concluded that the Truck Rule would result in upstream emission reductions due to decreased demand for fuel. 76 Fed. Reg. at 57,294 (JA 0547).

POP Diesel challenges the Truck Rule's focus on vehicle greenhouse gas emissions as arbitrary.  Pet. Br. 42.  While Movants agree that lifecycle assessment can be an important tool in achieving greenhouse gas reductions, and agree that the agency has authority under Section 202 to incorporate emissions from upstream sources, POP Diesel fails to demonstrate how EPA's approach to its first generation standards here falls short.  In particular, POP Diesel disregards EPA's reasonable decision to base its first-ever greenhouse gas standards for trucks on the agency's longstanding, vehicle emissions framework while committing, in follow-on rulemakings, to reexamine upstream sources in light of the additional experience and information the agency develops.  *See* EPA Resp. to Comments 16-157 (JA 1509).  Nor does POP Diesel fundamentally challenge EPA's view that, at present, the RFS provides an alternative mechanism creating incentives for biogenic fuels.

Instead, POP Diesel argues, Pet. Br. 45, that POP Diesel itself cannot take advantage of those incentives because it has yet to receive approval under the RFS program.  But whether or not a single entity has taken the steps needed to secure RFS approval does not alter the reasonableness of EPA's determination that the RFS, at present, provides incentives for biogenic fuels.  And, in any event, neither the merits of the RFS nor POP Diesel's status under that separate regulatory program is at issue in this proceeding.  In short, EPA provided a reasoned basis for

11

focusing initially on vehicle greenhouse gas emissions in its first-generation truck standards.

### III.   THE COURT SHOULD DENY DELTA'S PROCEDURAL CHALLENGE TO EPA'S TRUCK RULE.

Delta argues that, under 42 U.S.C. § 4365(c)(1), EPA failed to fulfill its nondiscretionary duty to "make available" the proposed Truck Rule to the Science Advisory Board when it provided the rule to other federal agencies for "formal review and comment."  Pet. Br. 53–60.  In addition, Delta argues that the Clean Air Act's procedural review provision, 42 U.S.C. § 7607(d)(8), (9), does not apply to EPA's alleged procedural error.  Pet. Br. 61–62.

These arguments are meritless.  Delta fails to identify any underlying scientific or technical flaw in EPA's Rule (which went unchallenged by the entities actually regulated by it, including manufacturers possessing significant expertise on the various technical issues presented).  Their claim under the Advisory Board statute seems to be (like their challenge to Movants' intervention) an exercise in gratuitous obstructionism.  Furthermore, as EPA demonstrates, the Advisory Board statute was not triggered during the Truck Rule rulemaking because the Rule was not, in the words of the statute, "provided to any other Federal agency for formal review and comment," 42 U.S.C. § 4365(c)(1).  Even assuming that the Advisory Board statute applied here, EPA nonetheless met its requirements by publishing the

12

proposed rule in the Federal Register and posting it on its website.   Moreover, even if EPA had committed a procedural error related to Advisory Board review of the Rule, this Court's precedents make clear that the Clean Air Act's procedural review provision requires Delta to show that the error was "so serious and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if such errors had not been made," 42 U.S.C. § 7607(d)(8).

## A.    The Advisory Board Statute Does Not Apply And, If It Did, EPA "Made Available" The Proposed Rule To The Advisory Board.

In order for the Advisory Board statute to apply, EPA must have provided the proposed Truck Rule to another "[f]ederal agency for *formal review and comment*."  42 U.S.C. § 4365(c)(1) (emphasis added).  The Clean Air Act provision under which EPA issued the Truck Rule, 42 U.S.C. § 7521(a)(1), contains no requirements for review by or consultation with any other federal agency as part of the rulemaking process.  *See* EPA Br. 66–67 (citing other provisions in the Act and other statutes that do require such formal review or consultation).  Moreover, as EPA argues, EPA reasonably determined that the Office of Management and Budget's review of the Truck Rule under Executive Order 12866 did not constitute formal agency review for purposes of the Advisory Board statute.  *Id.* at 67–68.

13

When EPA provides a proposed regulation to another federal agency for formal review and comment and, thus, triggers the Advisory Board statute, the statute requires that "[t]he Administrator . . . shall *make available* to the Board such proposed criteria document, standard, limitation, or regulation . . . ." 42 U.S.C. § 4365(c)(1) (emphasis added).  Delta incorrectly interprets this language as requiring that EPA *submit* the proposed Truck Rule to the Advisory Board.  Pet. Br. 53–55.  However, the text plainly indicates that, when the statute applies, EPA is under no obligation to submit the proposed rule to the Advisory Board.  As EPA has explained, this duty to "make available" requires EPA to make the rule "available" or "obtainable"; it does not impose an *additional* duty of affirmative transmittal or notice to the Board.  EPA Resp. to Comments 5-41 (quoting Webster's New Collegiate Dictionary) (JA 1414); EPA Br. 70.  Had Congress wanted to impose this additional duty, it would have used words to that effect.  *Cf.* Clean Air Act, 42 U.S.C. § 7408 (requiring consulting committees to "submit" information to the Administrator in one subsection, *id.* § 7408(b)(2), while requiring the Administrator to "publish and make available" information to various governmental agencies in another subsection, *id.* § 7408(f)(1)); *id.* § 7525(a)(2) (requiring the Administrator to "*inform* manufacturers and the National Academy of Sciences, and *make available* to the public" certain test results) (emphasis added).

Moreover, even if the phrases "formal review and comment" and "make available" were ambiguous, EPA is the entity responsible for administering the Advisory Board statute, *see* 42 U.S.C. § 4365(a), and, thus, is entitled to deference in interpreting it.  *See City of Arlington v. FCC*, 133 S. Ct. 1863, 1868 (2013); *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 843–45 (1984).  Therefore, this Court must defer to EPA's reasonable determination as to whether the statute was triggered and, if so, that the statute (1) did not require affirmative transmittal to the Advisory Board and (2) would be satisfied by publishing the proposed rule both online and in the Federal Register.[11]

**B.      The Clean Air Act's Provisions on Procedural Errors, 42 U.S.C. § 7607(d)(8), (9), Apply To Reviewing The Alleged Advisory Board Error.**

Even if the Advisory Board statute applied and even if EPA violated it by not making the Truck Rule available to the Advisory Board, this Court must apply the Clean Air Act's procedural review provision, 42 U.S.C. § 7607(d)(8), (9), to review any such violation, as it has done repeatedly when reviewing compliance

---

[11] Nothing in the Advisory Board statute requires that the Board respond to or opine about the proposed document, standard or regulation that has been made available to it.  As a practical matter, any party that believes that there are scientific or technical issues with EPA's proposal on which the Advisory Board's guidance would be helpful is free to urge that the Advisory Board take up the issues.  Delta identifies no such issue—and seeks to raise the consultation argument not out of some genuine question about the scientific or technical basis of the Rule, but only as a purported basis for unraveling this extensive rulemaking.

with the Advisory Board statute.  *Coal. for Responsible Regulation v. EPA*, 684 F.3d 102, 124 (D.C. Cir. 2012); *Am. Petroleum Inst. v. Costle*, 665 F.2d 1176, 1182–84, 1187–89 (D.C. Cir 1981).

Faced with these precedents, Delta oddly contends that the Supreme Court's general statement in *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 524 (1986), that "whenever possible, statutes should be read consistently," compels this Court to adopt a new, different standard[12] for reviewing alleged Advisory Board statute violations.  Pet. Br. 61–65.  On the contrary, as in *American Petroleum Institute* and *Coalition for Responsible Regulation*, the Advisory Board statute and 42 U.S.C. § 7607(d) can "be read consistently."  There is no conflict at all between (1) a statutory provision that imposes some requirement and (2) a statutory condition on judicial review stipulating that, to justify judicial intervention to enforce the requirement, violations must be shown to have made a difference.

### C.    Even If EPA Violated The Advisory Board Statute, Any Error Is Not So Serious, As Required By 42 U.S.C. § 7607(d)(8), (9), As To Warrant Invalidating The Rule.

Given that 42 U.S.C. § 7607(d) applies to procedural violations of the Advisory Board statute, as shown *supra*, pp. 15–16, Delta must show that EPA's

---

[12] Presumably, this different standard would be the Administrative Procedure Act's "prejudicial error" standard, 5 U.S.C. § 706, although Delta is not clear on the matter.  Given Delta's complete failure to demonstrate any defect in the scientific or technical analysis underlying the Truck Rule, its claims would fail under that standard too.

alleged failure to make the Rule available to the Advisory Board was "so serious and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if such error[] had not been made." *Am. Petroleum Inst.*, 665 F.2d at 1187 (quoting 42 U.S.C. § 7607(d)(8)); *see also Coal. for Responsible Regulation*, 684 F.3d at 124 (applying the same standard).  However, Delta has failed to meet this burden.

Indeed, Delta has not identified a single "scientific or technical" defect in EPA's analysis upon which the *possibility* of the Advisory Board's providing advice would have had a substantial likelihood of significantly changing the final rule.  *See* 42 U.S.C. § 4365(c)(2) (describing scope of the Advisory Board's review)*; see also Appalachian Power Co. v. EPA*, 135 F.3d 791, 815 (D.C. Cir. 1998) (plaintiffs had not "attempted to identify any defect in [EPA's] analysis, and hence cannot establish" that EPA's error "would have led to a significant change in the final rule").  Instead, Delta relies on the extra-record declaration of Roger O. McClellan.  Not only must the Court disregard this declaration, *see* 42 U.S.C. § 7607(d)(7)(A) (defining "exclusive[]" contents of record on judicial review), but, even on its merits, this declaration also fails to point to a single specific "scientific or technical" issue where the Advisory Board's advice would have had a substantial likelihood of changing the Truck Rule.

17

EPA carefully considered and documented the scientific and technical foundation for the Rule. First, in accordance with the Energy Independence and Security Act, 49 U.S.C. § 32902(k), the agencies relied heavily on the technical analysis of the March 2010 National Academy of Sciences Report. *See* 75 Fed. Reg. 74,152, 74,351 (Nov. 30, 2010) (JA 0252) ("One of the most important resources for the agencies in developing [the rule] was the report . . . ."); *see also id.* at 74,351–56 (JA 0252-57), for a detailed discussion of the agencies' incorporation of the Report's findings. Ultimately, EPA developed emission standards that were "consistent with, and based in part on the advice and recommendations" of the Report. EPA Resp. to Comments 5-42 (JA 1415). The fact that heavy-duty vehicle and engine manufacturers—who presumably have a significant understanding of the relevant scientific and technical issues and, as the regulated entities, have an incentive to raise any perceived errors—did not challenge the Truck Rule further highlights Delta's failure to identify any such defect. In short, Delta has not shown that affirmative transmittal of the proposed rule to the Advisory Board would have raised matters that are so serious and of such central relevance to the Rule that there is a substantial likelihood that the Truck Rule would have been significantly changed.

## CONCLUSION

For the foregoing reasons, this Court should deny the petitions for review.

18

Respectfully submitted,


/s/ Peter Zalzal
VICKIE PATTON
GRAHAM MCCAHAN
PETER ZALZAL
Environmental Defense Fund
2060 Broadway St., Ste. 300
Boulder, CO 80302
(303) 447-7214
pzalzal@edf.org

SEAN H. DONAHUE
Donahue & Goldberg, LLP
1130 Connecticut Avenue, N.W.
Suite 950
Washington, D.C. 20036
(202) 277-7085
sean@donahuegoldberg.com

*Counsel for Environmental Defense
Fund*


/s/ Benjamin Longstreth
BENJAMIN LONGSTRETH
Natural Resources Defense Council
1152 15th Street NW
Washington, DC 20005
(202) 513-6256
blongstreth@nrdc.org

DAVID PETTIT
Natural Resources Defense Council
1314 Second Street
Santa Monica, CA 90401
(310) 434-2300
dpettit@nrdc.org

*Counsel for Natural Resources
Defense Council*

19

<u>/s/ Zachary Fabish</u>
ZACHARY M. FABISH
Sierra Club
50 F Street NW, 8th Floor
Washington, DC 20001
(202) 675-7917
zachary.fabish@sierraclub.org

*Counsel for the Sierra Club*


Dated: November 24, 2014

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I hereby certify that the foregoing BRIEF OF MOVANT RESPONDENT-INTERVENORS ENVIRONMENTAL DEFENSE FUND, NATURAL RESOURCES DEFENSE COUNCIL, AND SIERRA CLUB in support of Respondents is written in Times New Roman size 14 font and contains 4,368 words as counted by the Microsoft Office Word 2010 word processing system, which complies with this Court's order of February 4, 2014 granting Movant Respondent-Intervenors an aggregate of 8,750 words to be shared between their two briefs.

/s/ Peter Zalzal
Peter Zalzal
Environmental Defense Fund
2060 Broadway St., Ste. 300
Boulder, CO 80302
(303) 447-7224
pzalzal@edf.org

*Counsel for Environmental Defense Fund*

Dated: November 24, 2014

21

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 24th day of November, 2014, the

foregoing BRIEF OF MOVANT RESPONDENT-INTERVENORS

ENVIRONMENTAL DEFENSE FUND, NATURAL RESOURCES DEFENSE

COUNCIL, AND SIERRA CLUB was served electronically through the court's

CM/ECF system on all registered counsel.


<div align="right">

/s/ Peter Zalzal
Peter Zalzal
Environmental Defense Fund
2060 Broadway St., Ste. 300
Boulder, CO 80302
(303) 447-7214
pzalzal@edf.org

*Counsel for Environmental Defense Fund*

</div>

Dated: November 24, 2014